**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IMPERIAL CONSTRUCTION GROUP, INC., Plaintiff, v. JOCANZ INC., Defendant. | **OPINION** Civ. No. 06-709 (WHW) |

**Walls, Senior District Judge**

Plaintiff Imperial Construction Group, Inc. ("Imperial") moves for entry of default judgment, pursuant to Fed. R. Civ. P. 55(b), against Defendant Jocanz, Inc. ("Jocanz"). Defendant has not opposed this motion. Pursuant to Fed. R. Civ. P. 78, the motion is decided without oral argument. The motion is granted.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Imperial, a New Jersey corporation, is a construction company with its principal place of business in Elizabeth, New Jersey. (Compl. ¶ 2.) Defendant Jocanz, a Pennsylvania corporation, is a construction company with its principal place of business in Lansdale, Pennsylvania. (Compl. ¶ 3.)

Plaintiff, entered into a contract with the City of East Orange, New Jersey, where Plaintiff as general contractor, agreed to provide construction services and materials necessary to

**NOT FOR PUBLICATION**

complete the construction and renovation of a publicly-owned firehouse (the "Project").[1] (Compl. ¶ 5.) On or about April 5, 2004, Plaintiff entered into an agreement with Defendant, where Defendant would act as a subcontractor to Plaintiff (the "Subcontract Agreement"). (Cert. of Richard Briggs (No. 25-2) ("Briggs Cert."), Ex. A.) In exchange for $1,080,000.00, Defendant agreed to complete certain masonry work on the Project. (Id., Ex. A § G.) Pursuant to the Subcontract Agreement, Defendant as subcontractor was responsible for, among other things: (1) delivering materials and equipment in a timely manner, (id., Ex. A § B); (2) ensuring that all subcontract work was completed in a good and workmanlike manner, (id., Ex. A § O); (3) imposing the required quality controls upon its employees and laborers, (id.); (4) delivering enough material in order to complete the subcontract work in accordance with the schedule, (id., Ex. A § B); (5) properly cleaning and maintaining the project, (id., Ex. A § H); (6) following the oral and written directives of Plaintiff, (id., Ex. A § B); (7) providing an on-site superintendent, (id., Ex. A § R); and (8) paying its union obligations, its subcontractors, and its suppliers, (id., Ex. A § L).

Defendant failed to complete its work as outlined in the Subcontract Agreement and was terminated from the Project. (Id. ¶ 4.) Before termination, Defendant had been paid $550,214.00 for the work it had performed. (Id. ¶ 5.) Later, Plaintiff hired a replacement subcontractor, Nu-Hars Mason Contractors ("Nu-Hars Mason"), to complete the $529,786.00

[1] There is some confusion as to whether the Project involved construction of a police facility or a firehouse. Exhibits to the Certification of Richard Briggs ("Briggs Certification") refer to the completion of a new police facility in East Orange, while the Briggs Certification and the Complaint refer to the renovation of a publicly-owned firehouse. The Court will adopt the Complaint and Briggs Certification's definition of the Project.

**NOT FOR PUBLICATION**

worth of masonry work that was left unfinished on the Project. (Id. ¶ 6.) In addition, Plaintiff was forced to resolve the outstanding union obligations and monies owed to Defendant's subcontractors and suppliers. (Id. ¶ 8.)

Plaintiff filed the Complaint on February 14, 2006. (Id. ¶ 16.) On June 13, 2006, Defendant filed its Answer that denied liability, and asserted affirmative defenses and counterclaims.[2] (Id. ¶ 17.) On June 1, 2007, the attorneys for Defendant moved to withdraw as counsel. (Mot. (No. 15).) Counsel's motion to be relieved was granted on July 12, 2007, and Magistrate Judge Madeline Cox Arleo ordered Defendant to obtain new counsel by August 30, 2007, or its Answer would be stricken and default entered. (Briggs Cert., Ex. I.) On October 22, 2007, after Defendant failed to obtain new counsel, Magistrate Judge Arleo issued a report and recommendation that Defendant's Answer, affirmative defenses, counterclaims, and Third-Party Complaint be stricken and that Plaintiff be allowed to proceed to judgment by default. (Id., Ex. J.) On November 14, 2007, the Court entered an Order adopting Magistrate Judge Arleo's report and recommendation and striking Defendant's Answer, affirmative defenses, counterclaims, and Third-Party Complaint. (Id., Ex. K.)

The Clerk of the Court entered default on November 15, 2007. (Id. ¶ 22.) On May 1, 2008, Plaintiff filed this motion requesting entry of default judgment against Defendant. (Id. ¶

[2] In addition, Jocanz filed its Third-Party Complaint against XL Speciality Insurance Company, XL Reinsurance America, and Arch Insurance Company. As Third-Party Plaintiff, Jocanz alleged that Third-Party Defendants failed to pay labor and material payment bonds that were issued with Plaintiff as a principal and Third-Party Defendants as sureties for the Project. Since Jocanz's Third-Party Complaint was eventually stricken, the Court will not address it. (See Order (No. 19).)

23.) The motion and supporting papers were served on Defendant by certified and regular mail. (Cert. of Serv. (No. 25-15).) Specifically, Plaintiff seeks to recover damages in the amount of $252,061.19 for costs incurred as a result of Defendant's breach, pre-judgment interest on those costs, and attorney's fees.

## LEGAL STANDARD

Fed. R. Civ. P. 55(b)(2) governs the court's entry of default judgment. The party against whom default judgment is requested must have been properly served with process. Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999). Before default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Fed. R. Civ. P. 55(a). See 10A Wright, et al., Federal Practice & Procedure § 2682 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, even where the defendant was served with process, and where the default has been noted pursuant to Fed. R. Civ. P. 55(a). See, e.g., Cableco, Inc., 1999 WL 269903 at *1 (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)). The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). When considering a motion for default judgment, a court assesses the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in

**NOT FOR PUBLICATION**

doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 WL 131182, at *1 (D.N.J. Jul. 16, 1991) (citing 10 Wright, et al., Federal Practice & Procedure § 2685 (2d ed. 1983)).

Although the court should accept as true the well-pleaded factual allegations of the complaint, the court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing Wright, et al., Federal Practice & Procedure § 2688 (2d ed. 1983)). Consequently, before granting default judgment, the court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, et al., Federal Practice & Procedure § 2688 (3d ed. 1998)). The court must also "conduct its own inquiry in order to ascertain the amount of damages with reasonable certainty." Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

## DISCUSSION

### 1. Liability

The record indicates that Defendant Jocanz did not respond to the order of Magistrate Judge Arleo to obtain counsel; the Court adopted the Magistrate Judge's recommendation to strike the Defendant's Answer, affirmative defenses, counterclaims, and Third-Party Complaint.

(Briggs Cert., Ex. K.) Default was then entered by the Clerk of the Court. (Id. ¶ 22.) Furthermore, the record indicates that Defendant was served with this motion for entry of default judgment and the supporting documents via certified and regular mail. (Cert. of Serv. (No. 25-15).) The Court is satisfied that Defendant had notice of the report and recommendation and the Court's Order adopting it as well as the motion for entry of default judgment. The Defendant has chosen not to respond.

Accordingly, the Court will treat the allegations as to liability in the Complaint as true and admitted by Defendant. Plaintiff Imperial has alleged that Defendant failed to perform in accordance with the Subcontract Agreement. (Briggs Cert. ¶ 4.) Plaintiff entered into the Subcontract Agreement with Defendant to complete masonry work on the Project for $1,080,000.00. (Id. ¶ 3.) Defendant repeatedly violated conditions of the Subcontract Agreement by failing to abide by the subcontract schedule to complete the work required in a timely manner. (Id.) Defendant's failure to comply with the Subcontract Agreement resulted in project delays, (id. ¶ 7), forced Plaintiff to pay Defendant's union obligations, subcontractors, and suppliers, (id. ¶ 8), and necessitated the hiring of a new subcontractor to complete the Project, (id. ¶ 9), and to remediate the defective work performed by Defendant, (id. ¶ 10). The Court is satisfied that Plaintiff has furnished sufficient evidence to establish grounds for imposing liability on Defendant for breach of the Subcontract Agreement.

**2. Damages**

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. Comdyne I, 908 F.2d at 1149.

**NOT FOR PUBLICATION**

Under Fed. R. Civ. P. 55(b)(2) a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages." Id. There are certain limited situations, however, where a district court can enter a final judgment without requiring further evidence of damages. KPS Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).

If the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149. A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." KPS Assocs., 318 F.3d at 19. "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." Id. at 19-20.

Here, Plaintiff seeks damages in the form of costs incurred as a result of Defendant's breach of the Subcontract Agreement over and above what Plaintiff would have paid to Defendant had it completed the Project. In addition, Plaintiff is asking for pre-judgment interest on the damages and attorney's fees for this motion.

**A. Costs Incurred**

At the time Defendant was terminated it had been paid $550,214.00 of the $1,080,000.00 original value of the Subcontract Agreement. (Briggs Cert. ¶ 5.) This left $529,786.00 worth of work for Defendant to complete. (Id. ¶ 6.) As a result of Defendant's failure to comply with the Subcontract Agreement, Plaintiff claims to have incurred costs in the amount of $781,847.19.

(Id. ¶ 12.) These costs incurred allegedly consist of: (1) $51,552.36 in union obligations paid by Plaintiff on Defendant's behalf; (2) $195,501.27 in supplier and subcontractor invoices to Diener Brick Company, Clayton Block Company, Inc., Harrison Supply, North American Scaffolding Co, Ferriera, and Fraco Products, Inc. that were unpaid by Defendant; (3) $519,793.56 in payments to Nu-Hars Mason, the contractor hired to complete Defendant's unfinished work; and (4) $15,000.00 in "internal administrative charges" incurred by Plaintiff as a result of having to hire Nu-Hars Mason. (Id.)

**i. Union Obligations**

Plaintiff submitted copies of checks along with an itemization of the payments that Plaintiff made on Defendant's behalf to substantiate the $51,552.36 worth of union obligations requested. (Id., Ex. C.) The first check, number 5782, is made out to "JOCANZ, INC & NEW JERSEY CARPENTERS FUND" in the amount of $12,500.00. (Id., Ex. C.) In the check description it states that the check is for "EAST ORANGE POLICE FACL." (Id., Ex. C.) The second check, number 53972, is made out to "NEW JERSEY BUILDING LABORERS STATEWIDE WALFARE [sic] FUND" in the amount of $39,052.36. (Id., Ex. C.) In the check description there were four payments totaling $22,858.70 that were made out to "EAST ORANGE POLICE" and two payments totaling $16,193.66 that were made out to "NEPTUNE BOARD OF EDUC." (Id., Ex. C.) In the Complaint allegations only concern Defendant's alleged breach of the Subcontract Agreement for the Project which was pursuant to Plaintiff's contract with the City of East Orange. If Plaintiff wishes to collect monies owed on another

**NOT FOR PUBLICATION**

agreement, than a separate action must be filed.[3] Defendant was responsible for payment of union obligations, (see id., Ex. A § L), so the Court is satisfied that Defendant is responsible to Plaintiff for $35,358.70 in union obligations in connection with this action.

**ii. Supplier and Subcontractor Invoices**

Plaintiff states that $195,501.27 in supplier and subcontractor invoices were left unpaid by Defendant when it was terminated from the Project. (Id. ¶ 12.) Plaintiff has submitted copies of the checks paid by it to Diener Brick Company, Clayton Block Company, Inc., Harrison Supply, North American Scaffolding Co., Ferriera, and Fraco Products who were Defendant's suppliers and subcontractors. (Id., Ex. D.) Defendant was responsible for payments to its suppliers and subcontractors, (see id., Ex. A § L), and the evidence is sufficient to satisfy the Court that Defendant is responsible to Plaintiff for $195,501.27 in unpaid supplier and subcontractor invoices.

**iii. Replacement Subcontractor Payments**

As stated, after Defendant was terminated from the Project, Plaintiff hired a replacement subcontractor, Nu-Hars Mason, to complete the masonry work on the Project. (Id. ¶ 9.) Plaintiff has included invoices and checks remitted to Nu-Hars Mason that show that Plaintiff paid $519,793.56 to the replacement subcontractor.[4] (Id., Ex. E.) This evidence is sufficient to satisfy

---

[3] In the counterclaim that was filed by Defendant on June 13, 2006 and eventually stricken, there were allegations concerning a separate subcontract between Imperial and Jocanz referred to as the "Neptune Project." (Countercl. (No. 2) ¶¶ 6, 8.)

[4] The subcontract agreement between Plaintiff and Nu-Hars Mason was for $50,000.00. (Briggs Cert., Ex. B § H.) The remaining $469,793.56 paid by Plaintiff to Nu-Hars Mason stemmed from change orders. (Id., Ex. E.)

the Court that Defendant is responsible to Plaintiff for $519,793.56 in payments made to Nu-Hars Mason as the replacement subcontractor.

### iv. "Internal Administrative Charges"

The last claim for damages made by Plaintiff is for $15,000.00 for charges incurred by Plaintiff as a result of having to hire a replacement subcontractor. The Certification of Richard Briggs states that Plaintiff "was also forced to incur internal administrative charges for the hiring of a replacement contractor and used its own forces to complete part of [Defendant's] work." (Id. ¶ 11.) Although the Court finds that Plaintiff is entitled to all damages associated with Defendant's breach of the Subcontract Agreement, Plaintiff has offered no evidence to support this claim of damages. With no evidentiary backing the Court will not award Plaintiff the monies requested. Should Plaintiff wish for the Court to consider awarding $15,000.00 for charges incurred as a result of having to hire a replacement subcontractor, Plaintiff must submit evidence within fourteen days of the date of this Opinion sufficient to support this claim of damages.

* * *

The total damages awarded can be calculated by looking at what Plaintiff has paid over and above the amount that would have been paid to Defendant had it not been terminated. Had Defendant fulfilled the Subcontract Agreement it would have been paid $529,786.00. (Id. ¶14.) This amount can be deducted from the $750,653.53 in union obligations, supplier and subcontractor invoices, and payments to a completion contractor that the Court found Plaintiff incurred as a result of Defendant's breach of the Subcontract Agreement. The result is that there

**NOT FOR PUBLICATION**

were $220,867.53 in additional costs incurred by Plaintiff over and above what was owed to Defendant pursuant to the Subcontract Agreement. Accordingly, the Court will grant default judgment for costs incurred in the amount of $220,867.53.

**B. Pre-Judgment Interest**

Plaintiff asserts that it is entitled to pre-judgment interest on the damages for costs incurred, in accordance with the New Jersey Court Rules, from March 6, 2006 to the date of this Opinion.[5] (Cert. of Stephen Paul Winkles (No. 25-14) ("Winkles Cert.") ¶ 3.) Under New Jersey law, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988)). Pre-judgment interest is awarded in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Id. (quoting Ellmex Constr. Co. v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13 (App. Div. 1985)). The "basic consideration" in awarding pre-judgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the pre-judgment period during which the defendant had the benefit of money to which the plaintiff is found to have been earlier entitled. County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006).

---

[5] Although Plaintiff requests pre-judgment interest on the costs incurred until April 29, 2008, (Cert. of Stephen Paul Winkles ¶ 4), the Court notes that the Certification of Stephen Paul Winkles was dated April 29, 2008, and interprets Plaintiff's request to actually be seeking pre-judgment interest until the date of the entry of default judgment.

Here, since Plaintiff has been denied use of its money, the Court is satisfied that awarding pre-judgment interest is appropriate. The issue remaining is at what rate the court will award pre-judgment interest. Plaintiff requested pre-judgment interest broadly in accordance with the New Jersey Court Rules. (Winkles Cert. ¶ 5.) The Court's review of the New Jersey Court Rules combined with the numbers submitted in the Certification of Stephen Paul Winkles (the "Winkles Certification") suggests that Plaintiff is requesting pre-judgment interest pursuant to N.J. Ct. R. 4:42-11(b), which governs the rate of pre-judgment interest awarded for tort claims. As noted, New Jersey case law makes it clear that the rate at which pre-judgment interest is calculated for contract claims is within the discretion of the court. Spencer v. Long Valley Inn, Inc., 2005 WL 3488033, at *6 (N.J. Super. Ct. App. Div. Dec. 22, 2005). Absent unusual circumstances, however, trial courts should refer to N.J. Ct. R. 4:42-11(b) when determining the rate of pre-judgment interest to be awarded. Benevenga v. Digregorio, 325 N.J. Super. 27, 35 (App. Div. 2005). Here, there are no unusual circumstance and the Court will award pre-judgment interest at the rate stipulated by N.J. Ct. R. 4:42-11(b).

N.J. Ct. R. 4:42-11(b) states, "the court shall . . . include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises . . . in the same amount and manner provided for by paragraph (a)."[6] N.J. Ct. R. 4:42-11(a)(iii) states that interest will be calculated "for judgment

---

[6] Plaintiff has requested that pre-judgment interest on the costs incurred begin to accrue on March 6, 2006. Though Plaintiff has not attached any significance to this date, the Court is satisfied that it is an appropriate date for interest to begin to accrue as it is less than one month after the action was filed on February 14, 2006.

**NOT FOR PUBLICATION**

exceeding the monetary limit of the Special Civil Part . . . at a rate provided for in subparagraph (a)(ii) plus 2% annum." The judgment in this case exceeds the Special Civil Part monetary limit of $15,000.00, so 2% annum will be added to the "average rate of return . . . for the corresponding preceding fiscal year . . . of the State of New Jersey Cash Management Fund," N.J. Ct. R. 4:42-11(a)(ii). Accordingly, the interest rates to be awarded are 4.0%, 6.0%, and 7.5% respectively for the calender years 2006, 2007, and 2008. The appropriate amount of interest to be awarded for 2006 is $7,284.20, for 2007 is $13,252.05, and for 2008 is $9,640.38.[7] Default judgment for pre-judgment interest on the costs incurred as a result of Defendant's breach of the Subcontract Agreement is awarded in the amount of $30,176.63.[8]

---

[7] Interest is calculated as follows. For the year 2006, the interest rate is 4.0% per annum. 4.0% of $220,867.53 is $8,834.70. That amount divided by 365 days in a year, equals the amount of interest due per diem, $24.20. The per diem total is multiplied by 301, the number of days interest accrued in 2006, for total interest in 2006 of $7,284.20. For the year 2007, since interest accrued for the entire year, the interest rate of 6.0% annum yields $13,252.05 in total interest. For the year 2008 the interest rate is 7.5%. 7.5% of $220,867.53 is $16,565.06. That amount divided by 366 days in a year, equals the amount of interest due per diem, $45.26. The per diem total is multiplied by 213 days, the number of days interest accrued in 2008, for total interest in 2008 of $9,640.38. These totals added together equal $30,176.63 due in pre-judgment interest.

[8] The Court is aware of a recent Third Circuit decision Gleason v. Norwest Mortgage, Inc., which reversed and remanded a district court decision awarding a party pre-judgment interest in a contract case pursuant to N.J. Ct. R. 4:42-11(b) despite the district court's finding that no exceptional circumstances existed. 253 Fed. Appx. 198, 204 (3d. Cir. 2007). While the Court is mindful of this precedent, Gleason is distinguishable from this case. In Gleason, the appellant was requesting an interest rate above the rate stipulated in N.J. Ct. R. 4:42-11(b). In this case Plaintiff only asks for interest in accord with the New Jersey Court Rules. As a result, the Court does not interpret the Third Circuit's decision as a rejection of N.J. Ct. R. 4:42-11(b) as a guideline for selecting an interest rate, but rather the decision simply requires that the district court address how the interest rate provided in N.J. Ct .R. 4:42-11(b) would compensate a party if a different rate was requested.

**NOT FOR PUBLICATION**

**C. Attorney's Fees**

In the Winkles Certification, Plaintiff states "FRCP 54(d) states that costs should be awarded to a prevailing party. Therefore, Imperial should be entitled to interest as well as attorney's fees for making this motion." (Winkles Cert. ¶ 3.) Fed. R. Civ. P. 54(d)(1) states "costs – other than attorney's fees – should be allowed to the prevailing party." Nowhere in Fed. R. Civ. P. 54(d) does it state that the prevailing party is entitled to attorney's fees. Plaintiff is entitled to recover other costs associated with making this motion, however they have failed to provide any request for costs.

While Fed. R. Civ. P. 54(d) does not automatically award attorney's fees to the prevailing party, the Rule provides a mechanism by which the prevailing party can recover them. Fed. R. Civ. P. 54(d)(2) allows for the prevailing party to request attorney's fees by motion within fourteen days after the entry of judgment. The motion must specify the case law, statute, rule, or other ground entitling the movant to the award and state the amount of attorney's fees sought. Here, Plaintiff has only provided a brief description of the services rendered by Plaintiff's counsel and has not stated why they are entitled to attorney's fees. Accordingly, the Court will not award Plaintiff attorney's fees at this time. If Plaintiff wishes to be awarded attorney's fees, it must make a motion in accordance with Fed. R. Civ. P. 54(d)(2) following entry of default judgment.

**NOT FOR PUBLICATION**

## CONCLUSION

For the preceding reasons, Plaintiff Imperial Construction Group, Inc.'s motion for entry of default judgment is granted. Judgment is entered in the amount of $251,044.16.

July 31, 2008

**s/William H. Walls**
United States Senior District Judge

**Appearances**

Stephen Paul Winkles, Esq.
Tesser & Cohen
946 Main Street
Hackensack, New Jersey 07601
Attorney for Plaintiff Imperial Construction Group, Inc.